**A. F. GALLUN & SONS CORPORATION, Plaintiff,**

v.

**UNITED STATES of America, Defendant.**

No. 79–C–76.

United States District Court,
E. D. Wisconsin.

March 6, 1981.

Foley & Lardner by James P. Brody, Milwaukee, Wis., for plaintiff.

Thomas R. Jones and Nancy Morgan, Tax Div. U. S. Dept. of Justice, Washington, D. C., for defendant.

## DECISION and ORDER

MYRON L. GORDON, District Judge.

This case was tried to the court earlier this year, and the parties have submitted post-trial briefs. The issue I must resolve is whether the plaintiff corporation is liable for the accumulated earnings tax imposed by the defendant for the plaintiff's fiscal year ended September 30, 1974. The plaintiff seeks a refund of $147,096, the amount of the tax imposed, plus statutory interest.

■ Imposition of the accumulated earnings tax is authorized by 26 U.S.C. § 531, upon corporations which, under § 532, withhold the payment of dividends and other distributions in order to escape the payment of taxes at the shareholder level. To have an accumulated earnings tax penalty set aside, the taxpayer has the burden of showing that either its accumulation of earnings and profits did not exceed the reasonable needs of the business, or that there was no intent to avoid income taxes at the shareholder level. *See Starman Investments, Inc. v. United States*, 534 F.2d 834 (9th Cir. 1976).

The parties have stipulated that during the plaintiff's 1974 fiscal year, the corporation had net profits of $894,471 and paid out $408,772, or approximately 46% of net profits, in dividends. It is also stipulated that between 1939 and 1974, the plaintiff distributed nearly 58% of its net profits to its shareholders in cash dividends; dividends were paid even in loss years.

The plaintiff is primarily engaged in the business of calfskin tanning. By 1974, twenty-two of the twenty-four calfskin tanners in the United States had gone out of business. Calfskin tanning is a labor-intensive business and has been beset by steadily increasing calfskin prices and growing foreign competition. The plaintiff's physical plant is between seventy-five and a hundred years old. Photographs received in evidence demonstrate the adverse effects of age on the plaintiff's property.

With regard to the reasonable needs of the plaintiff's business in 1974, I believe the evidence developed at trial fully supports Gallun's estimation of its future needs in the amount of $7,710,487. I reject the government's estimation of the value of the plaintiff's inventory and the deduction of an amount the plaintiff receives as income on its investments; no probative evidence was introduced to support the government's calculations in these respects. In addition, I will adopt the plaintiff's $9,952,498 figure as the correct estimation of its available liquid assets in 1974; the government's figure places an unreasonably high current value on certain stock held by the corporation.

It is with regard to evaluating the plaintiff's other reasonable business needs that the government's case breaks down. The plaintiff has listed ten additional reasonable business needs it confronted in 1974 totaling $15,745,173, but the government has conceded only one such burden, with a value of $295,000. In my opinion, although one might disagree with the exact sum the plaintiff has attached to its ten itemized needs, the plaintiff has successfully demonstrated that each of the ten items was a reasonable business need in 1974.

■ A business is entitled to retain earnings and profits to meet its reasonable anticipated future requirements if it has made "specific, definite and feasible plans ... for use of the earnings retained in the business," or if the needs are inherently reasonable or foreseeable even if no concrete plans have been formulated for meeting them. *Eberle Tanning Company v. United States*, 342 F.Supp. 1039, 1042–43 (M.D.Pa.1972). *Accord, Sterling Distributors, Inc. v. United*

*States,* 313 F.2d 803–807 (5th Cir. 1963). Thus, under the law, either the existence of specific plans or the awareness of specific future problems may justify the retention of earnings and defeat the imposition of an accumulated earnings tax.

The plaintiff sustained its burden of demonstrating at trial that the existence of definite plans in 1974 justify the treatment of the following items as reasonable business needs: $75,000 to comply with a citation issued by the Occupational Safety and Health Administration; $295,000 for funding the pension plan, a need not disputed by the government; $1,300,000 for conversion of the plant's energy source from oil to coal, a plan based on the escalating cost of fossil fuels as a result of the energy crisis; $1,040,000 for extraordinary maintenance repairs over a ten year period to keep the aging physical facility operating; $50,000 for a new shipping dock; and $104,063 pursuant to the profit sharing plan adopted in 1969 and amended in 1974. The total cost for implementing these reasonable plans in 1974 was at least $2,800,000.

Into the second category of reasonable business needs—foreseeable specific problems—can be placed a sum necessary to pay a dividend in 1975 comparable to that paid in previous years, or roughly $400,000; at least $2,000,000 to comply with regulations to be issued by the Environmental Protection Agency; and at least $2,000,000 as a reserve for building or purchasing a new facility to replace the existing plant. The total cost for meeting these reasonable foreseeable requirements was in 1974 at least $4,400,000. The two categories of reasonable business needs total $7,200,000. Accordingly, I find that in 1974, the plaintiff's total reasonable business needs ($14,910,487) exceeded its available liquid assets ($9,952,498) by nearly $5,000,000.

It is remarkable that the government has been unwilling to concede any of the plaintiff's other claimed business needs except the cost of funding the pension plan. The government's witness testified that he simply did not include these costs in his calculations. The government argues that only a small amount of the above sums were actually expended, but that is not the test. The issue is whether a reasonable business man in 1974 would have set aside the above sums to meet the obligations described. *See Oklahoma Press Pub. Co. v. United States,* 437 F.2d 1275 (10th Cir. 1971). I am satisfied that the plaintiff's reasonable business burdens in 1974 exceeded the corporation's available liquid assets.

In addition, I am also persuaded that the plaintiff's retention of approximately one-half of its 1974 earnings was not motivated by a purpose to escape income taxes at the shareholder level. The fact that one of the plaintiff's stockholders, who was also chairman of the board, was in the highest income tax bracket is not controlling on the question of the corporation's intent. Moreover, in light of the vagaries of the tanning business, I do not attach any significance to the plaintiff's substantial unrelated investments.

Rather, I find impressive the plaintiff's long history of paying out approximately one-half of its retained earnings in cash dividends. The hazards of this industry are amply reflected by the fact that in the ten years preceding 1974, twenty-two of the plaintiff's twenty-three domestic competitors went out of business. The plaintiff's business requires the maintenance of large inventories, and the cost of maintaining the existing facility, in good repair and in compliance with OSHA and EPA regulations, not to mention the cost of replacing the venerable facility, reasonably appeared in 1974 to be very high. In view of the plaintiff's erratic sales performance over the years, it was certainly reasonable for the company to maintain a substantial portfolio of unrelated investments to cushion the impact of bad years.

In sum, I find very little justification for the government's position in this case. The government's only witness had no familiarity with the tanning industry. The government attempted to support its case by stressing the income tax bracket of the company's leading stockholder and the company's substantial passive investments; all

other contrary factors were either ignored or dismissed without satisfactory explanation.

Therefore, IT IS ORDERED that the plaintiff be and hereby is entitled to judgment against the United States for the refund of $147,096, plus interest.